[Crim. No. 2656.   Third Dist.   Nov. 8, 1955.]

In re JACK HOWARD, on Habeas Corpus.

Cooper, White & Cooper and John E. Schaeffer for Petitioner.

Herbert Pothier, Marcel E. Cerf and Robinson & Leland as Amici Curiae for Petitioner.

Joseph Maddux, District Attorney (Sonoma), for Respondent.

Severson, McCallum & Davis, Nathan R. Berke and George Brunn as Amici Curiae for Respondent.

PEEK, J.—By habeas corpus, petitioner seeks his release from an order of the Superior Court of Sonoma County adjudging him to be in contempt for refusing to answer certain questions propounded to him.

The controversy arises out of a labor dispute between certain employers engaged in processing apples in Sonoma County and the General Truck Drivers, Warehousemen and Helpers Union, Local 980, of the A. F. of L. The employers obtained a temporary restraining order and an order to show cause why a preliminary injunction should not be granted. At the hearing on the preliminary injunction petitioner was called as a witness for plaintiffs. He testified he was a reporter for a San Francisco newspaper; that he had been in Sebastopol on August 11 and 12; and that he had written a story about the labor dispute which was published on August 14 under his byline. The story referred to many of the individuals involved in the strike, one of whom was Peter Andrade, an officer of the Teamsters Union, who was quoted as follows in the article: " 'We'll observe the order,' Andrade told the special meeting. 'But as individual American Citizens, anyone has the right to refuse to handle hot apples. And we're telling this to all union members in the West.' " Petitioner further testified he was acquainted with Andrade; that he had "covered the story" of the strike for his paper and that he had seen Andrade in the Sebastopol

area. When he was asked by the employers' counsel if he had a conversation with Andrade on August 12, he stated to the court, "I'd like to seek some advice here if I may. It is my intention here to claim privilege of the law, Section 1881-6, referring to disclosure of the source of a news story."

Considerable discussion then ensued between the court and counsel as to the propriety of the question. Plaintiffs' counsel contended that since the article contained a quotation of remarks attributed to Andrade, the source of Howard's information was thereby disclosed and hence he had waived the privilege. In order to give time for further study of the question and to enable the witness to obtain the advice of counsel, the court sustained petitioner's claim of privilege and continued his interrogation to the following day.

Upon reconvening, the court commented that the "article as written, purports to divulge the source of the information" and concluded that the privilege afforded under the applicable section "has been waived." On the previous day the court had stated that it appeared he would "have to assume" that petitioner "got the story" from the people whose names appeared in the story. And that "when you write a story and in that very story disclose the sources of information of the story, . . . you have waived any privilege that you might claim." The court then ordered the witness to answer the following question: "Mr. Howard, when you were in Sebastopol area as you have testified, did you have a conversation with Mr. Peter Andrade which became the subject of the article which you subsequently wrote and which is now in evidence as Plaintiff's Exhibit #7a and #7b?" To this question the witness answered, "I respectfully decline to testify under the provisions of the Code of Civil Procedure, Section 1881, subdivision 6."

The subsection referred to was added in 1935 and provides as follows:

"A publisher, editor, reporter, or other person connected with or employed upon a newspaper can not be adjudged in contempt by a court, the Legislature, or any administrative body, for refusing to disclose the source of any information procured for publication and published in a newspaper."

It thus appears that in order for the statute to apply, two elements are necessary. First, that the information must have been procured for publication, and second, that the information so received must have been published before the privilege arises. Therefore, in view of the record before the

court, the sole question presented is whether or not the article, as published, automatically constituted a waiver of the privilege of nondisclosure. We believe it did not.

As written the story in question merely related information concerning a speech made by Andrade at a special union meeting. But nothing which was written by petitioner can be said to have disclosed the source of his information. It cannot be assumed from the use of quotation marks that the statement attributed to Andrade was made directly to the petitioner. As he notes, his information could have been secured in many ways; that is, he might have been at the meeting openly or otherwise; he might have talked to Andrade before or after the meeting; he might have learned of Andrade's speech from another person; he might have received his information from a printed press release; he might have listened to a recording of the speech; or the story might have been telephoned to his newspaper and rewritten by someone else under his byline. It is readily apparent from the above illustration that the literary form in which information secured for publication is cast does not necessarily disclose the source from which it is obtained. It follows then that in the absence of any showing other than the published news story, which for the reasons hereinbefore noted we hold to be indecisive, the petitioner did not waive the privilege contained in section 1881, subdivision 6, of the Code of Civil Procedure.

Numerous additional contentions are made; however, in light of what we have heretofore said, any further comment by the court would be but dicta.

The petitioner is discharged from all restraint under the judgment of contempt, and bail is exonerated.

Van Dyke, P. J., and Schottky, J., concurred.